UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

GENARO ANTONIO CASTRO and JUAN NUNEZ,

                              Plaintiffs,

           -against-

CITY OF NEW YORK; P.O. JAMES SCHUESSLER
(Shield No. 28718), in his individual and official
capacities; and P.O. ALEJANDRO VILLALONA (Shield
Number 25443), in his individual and official capacities;

                              Defendants.
-------------------------------------------------------------------------X

**COMPLAINT**

JURY TRIAL DEMANDED

15-cv-06121

      Plaintiffs, Genaro Antonio Castro and Juan Nunez, by their attorney, Steven E. Lynch, allege for their complaint against the defendants as follows:

### PRELIMINARY STATEMENT

      1.     Plaintiffs brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of their civil rights guaranteed by the Constitution of the Unites States.

### JURISDICTION

      2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

      3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

### VENUE

      4.     Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim

arose.

## JURY DEMAND

5.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.     The plaintiffs are Hispanic males and were at all relevant times residents of the City and State of New York.

7.     Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9.     At all times hereinafter mentioned, the individually named defendants, P.O. James Schuessler and P.O. Alejandro Villalona and were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.    At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.    Each and all of the acts of the defendants alleged herein were done by said

defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13. On or about June 6, 2014, at approximately 8:00 p.m., in the vicinity of Saratoga Avenue and Broadway, Brooklyn, New York, plaintiff Nunez drove his van with plaintiff Castro sitting in the passenger seat.

14. After Plaintiff Nunez parked the van, plaintiff Castro exited and went into a store to purchase a soda.

15. A police officer, believed to P.O. Alejandro Villalona, approached plaintiff Nunez and ordered plaintiff Nunez out of his van.

16. P.O. Villalona asked plaintiff Nunez where plaintiff Castro went.

17. Plaintiff Nunez responded that plaintiff Castro went to get a soda.

18. P.O. Villalona told plaintiff Nunez that "we're going to look for your friend" and handcuffed plaintiff Nunez and placed plaintiff Nunez in a police vehicle.

19. P.O. Villalona said plaintiff Nunez would be released upon the apprehension of plaintiff Castro.

20. While detained in the police vehicle, plaintiff Nunez identified plaintiff Castro to P.O. Villalona.

21. A police officer, believed to be P.O. James Schuessler, approached plaintiff Castro and said "let's go."

22. Plaintiff Castro asked "what's going?" and "why am I being arrested?"

23. At no point on June 6, 2014 did plaintiff Nunez or plaintiff Castro commit any

offense in the presence of the arresting officers.

24. Plaintiffs Nunez and Castro were transported to the 73rd Precinct, 1470 East New York Ave, Brooklyn, NY 11212.

25. On or about June 7, 2014, plaintiff Castro was charged with New York City Administrative Code section 10-118(b) destruction or removal of property in buildings or structures.

26. On or about June 7, 2014, plaintiff Nunez was charged with Penal Law section 265.01(1) criminal possession of a weapon in the fourth degree and New York City Administrative Code section 16-118(7)(b)(1) unauthorized removal of recyclable materials.

27. Subsequently, all charges against plaintiffs Nunez and Castro were adjourned in contemplation of dismissal.

28. As a result, the plaintiffs' criminal cases were dismissed and sealed.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violations for Unlawful Stop and Search*
(Against the Individual Officer Defendants)

29. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

30. Defendants violated the Fourth and Fourteenth Amendment by stopping plaintiffs without reasonable suspicion.

31. By virtue of the foregoing, the defendants deprived the plaintiffs of their Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of their person and are liable to plaintiffs under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violation for False Arrest*
(Against the Individual Officer Defendants)

32. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

33. As a result of defendants' aforementioned conduct, the plaintiffs were subjected to illegal, improper, and false arrests. The plaintiffs were taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

34. Plaintiffs were conscious of their confinement.

35. As a result of the foregoing, plaintiffs' liberty was restricted in filthy and degrading conditions for an extended period of time, plaintiffs were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

36. By virtue of the foregoing, the defendants deprived the plaintiffs of their Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his person and are liable to plaintiffs under 42 U.S.C. §1983.

## THIRD CAUSE OF ACTION
*42 U.S.C. § 1983- Denial of the Right to a Fair Trial*
(Against the Individual Officer Defendants)

37. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

38. The defendants created false evidence against the plaintiffs and drafted or signed sworn criminal complaints and false police reports.

39. The defendants forwarded to prosecutors fabricated and false evidence that was likely to influence a jury's decision.

40. The defendants knowingly and intentionally provided false evidence against plaintiffs in legal proceedings.

41. By virtue of the foregoing, the defendants deprived the plaintiffs of their constitutional right to a fair trial and are liable to plaintiffs under 42 U.S.C. §1983

### FOURTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

42. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

43. The City of New York and the New York City Police Department fail to scrutinize and hold accountable police officers who violate civil rights.

44. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more

---

[1] Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on November 7, 2014.

than $117 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3]

45. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

46. However, the City of New York has isolated NYPD officers like P.O. James Schuessler and P.O. Alejandro Villalona from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against

---

[2] Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on November 7, 2014.

[3] "Report: Number Of Lawsuits Against NYPD Hits Record High," http://newyork.cbslocal.com/2014/02/16/report-number-of-lawsuits-against-nypd-hits-record-high/, February 16, 2014 last visited on November 7, 2014.

officers.[4] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

47. The 83rd precinct of the New York City Police Department has an extensive history of civil rights violations. According to the City Comptroller's Office fiscal year report for 2009, 66 Civilian Complaint Review Board complaints originated in the 83st precinct.[5] In addition to prior lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers from the 83rd precinct unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

48. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

49. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and

---

[4] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on November 7, 2014.

[5] "CCRB: Attribution of Complaints to Patrol Borough Brooklyn North 2005-2009," https://data.cityofnewyork.us/Public-Safety/CCRB-Attribution-of-Complaints-to-Patrol-Borough-B/zwt9-6u9n, lasted visited on November 7, 2014.

incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

50. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

51. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

52. Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

53. As a result of the foregoing, plaintiffs Genaro Antonio Castro and Juan Nunez are

entitled to compensatory damages in an amount to be determined by a jury and are further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
      October 26, 2015                By:    Steven E. Lynch
                                                                         /s/
                                                                  Steven E. Lynch
                                                                  Attorney for Plaintiff
                                                                  The Law Offices of Steven E. Lynch
                                                                  233 Fifth Avenue, Suite 4A
                                                                  New York, New York 10016
                                                                  (T) (718) 858-8737
                                                                  (F) (718) 690-3593
                                                                  steven@stevenelynch.com